ROSE MARIE REIFSCHNEIDER, APPELLANT, V. NEBRASKA METHODIST HOSPITAL, A CORPORATION, ET AL., APPELLEES.

387 N.W.2d 486

Filed May 23, 1986.   No. 85-149.

I

Cynthia G. Irmer of Matthews & Cannon, P.C., for appellant.

Robert M. Slovek and Joseph S. Daly of Sodoro, Daly & Sodoro, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

BOSLAUGH, J.

The plaintiff, Rose Marie Reifschneider, commenced this action to recover damages for the injuries she sustained when she fell from a hospital cart on April 4, 1977. The defendants are Nebraska Methodist Hospital, Emergency Medical Services Group, and Dr. Robert Stryker.

After an evidentiary hearing, the trial court sustained the defendants' motion for summary judgment. The trial court found there was no competent evidence giving rise to a genuine issue of material fact. The finding was based in part on the stipulation of the parties that no expert witness would be called on the issues of the standard of care or liability of the defendants. The plaintiff has appealed.

Most of the facts are not in dispute. On April 4, 1977, the plaintiff was taken to the emergency room of Nebraska Methodist Hospital by her father, Jacob Reifschneider. The plaintiff appeared to be unstable and semiconscious. The emergency room personnel placed the plaintiff on a hospital cart in an examining room. The side rails on the cart were raised, but the plaintiff was not strapped down or otherwise restrained.

The defendant Stryker, the physician on duty in the emergency room, was called to examine the plaintiff. His examination, as shown by the emergency room chart, revealed that the plaintiff was moderately drowsy and had slurred speech. Her pupils were equal and reacted to light, but she had some nystagmus, which is a rhythmic jerking motion of the eyes which may be due to a number of different reasons. The doctor

found some questionable weakness of the right hand and some tenderness in the plaintiff's lower abdomen. A neurological examination was conducted, but the results were negative, other than that the plaintiff appeared lethargic and questionably sedated. The doctor ordered that the patient be catheterized. The doctor testified by deposition that he asked someone to remain in the room with the plaintiff at all times, but he did not remember to whom he gave that order.

After the doctor's examination but while the plaintiff was still on the hospital cart in the examining room, the nurse who was attending her was called from the room by the charge nurse. The charge nurse, after requesting that the attending nurse give assistance elsewhere, saw that the plaintiff's father was in the room and asked him to remain with the plaintiff. Despite the charge nurse's request, the plaintiff's father left the plaintiff unattended. The plaintiff then attempted to get off the end of the hospital cart and fell, suffering a severe blow to the face and temporomandibular joint. This suit was filed to recover damages for the injuries she sustained in the fall.

The plaintiff's second amended petition made two specific allegations of negligence. The plaintiff alleged that the defendants were negligent (1) in failing to restrain the plaintiff and (2) in failing to provide attendants or adequate supervision. The trial court granted summary judgment in favor of all the defendants on both allegations, due to the absence of expert testimony as to the duty of care.

Summary judgment is appropriate when there is no genuine issue as to any material fact. Neb. Rev. Stat. § 25-1332 (Reissue 1979). The moving party must first show that if the evidence were uncontroverted at trial he would be entitled to judgment as a matter of law. *Hanzlik v. Paustian*, 211 Neb. 322, 318 N.W.2d 712 (1982). Such a prima facie showing shifts the burden of producing evidence as to a factual issue to the party opposing the motion. *Hanzlik, supra*. The court then views the evidence in a light most favorable to the party against whom the motion is directed and decides only if there is a genuine issue as to any material fact, but not how that issue is to be decided. *Hanzlik, supra*; *Scheideler v. Elias*, 209 Neb. 601, 309 N.W.2d 67 (1981). " 'Summary judgment is an extreme remedy and should be

awarded only when the issue is clear beyond all doubt.' " *Hanzlik, supra* at 327, 318 N.W.2d at 715 (citing *Scheideler v. Elias, supra*).

It is clear from the record the plaintiff failed to meet her burden of producing some competent evidence of negligence on the issue of failure to restrain. Dr. Stryker's affidavit, which was received in evidence, was sufficient as a prima facie showing on the absence of negligence. See *Hanzlik v. Paustian*, 216 Neb. 575, 344 N.W.2d 649 (1984). The burden of producing evidence to show a genuine factual issue then shifted to the plaintiff. The plaintiff offered no evidence as to the defendants' alleged duty of care to restrain the plaintiff.

In Nebraska, whether a specific manner of treatment or exercise of skill by a physician or surgeon or other professional demonstrates a lack of skill or knowledge or failure to exercise reasonable care is a matter that, usually, must be proved by expert testimony. *Northrup v. Archbishop Bergan Mercy Hosp.*, 575 F.2d 605 (8th Cir. 1978); *Hanzlik v. Paustian*, 211 Neb. 322, 318 N.W.2d 712 (1982); *Halligan v. Cotton*, 193 Neb. 331, 227 N.W.2d 10 (1975). See, also, Annot., 40 A.L.R.3d 515 (1971). One of the exceptions is that "expert testimony is not legally necessary when the conclusion to be drawn from the facts does not require specific, technical, or scientific knowledge and the circumstances surrounding the injury are within the common experience, knowledge, and observation of laymen." *Northrup, supra* at 607.

The plaintiff argues that the question of restraint is custodial or nonmedical and within the grasp of knowledge of ordinary laymen, and, therefore, no expert testimony as to the defendants' duty to restrain is necessary. This argument assumes that the ordinary trier of fact, judge or jury, is capable of assessing the status of an emergency room patient and determining whether or not restraints are needed. This court has indicated a hesitancy in placing such a burden on the trier of fact. *Halligan v. Cotton, supra.* We believe expert testimony is required to establish a duty of the defendants to restrain a patient such as the plaintiff, and, absent such evidence, the motion was properly sustained as to that issue.

On the issue of adequate supervision or provision of

attendants, it is necessary to consider separately the evidence offered against each defendant. Although this court cannot assume that a duty to provide attendants exists, and will not find that such knowledge is within the realm of ordinary experience, there is some evidence in the form of Dr. Stryker's testimony that Nebraska Methodist Hospital owed such a duty to the plaintiff.

The depositions of Dr. Stryker and nurses Jass and Metcalfe, staff nurses on duty at the time of plaintiff's injury, were received in evidence without objection. The deposition of Dr. Stryker addresses the duty of due care owed by the hospital to the plaintiff. The relevant portion of the deposition is as follows:

Q. Okay. But you didn't ask anybody to remain in the room with her at all times?

A. Yes, I did.

Q. Oh, you did ask someone to do that?

A. Yes.

Q. Who did you ask to remain in the room?

A. I don't recall.

Q. Would it have been a nurse or a person—are there other people besides nurses and doctors in the emergency room?

A. Yes.

Q. What kind of employees are those?

A. There's secretaries, there are technicians, there's licensed L.P.N.'s, licensed practical nurses.

Q. All right.

A. That's essentially, I think, it.

Q. Would you have chosen somebody from any one of those particular groups to stay in the room at all times?

A. Yes, I would have given that order to a nurse or L.P.N.

Thus, the record does contain some expert testimony that the hospital had a duty to provide a constant attendant to the plaintiff. The record further discloses that at the time the plaintiff was injured there were no hospital personnel present or in attendance in the room with the plaintiff. The record contains a prima facie showing of negligence by the hospital

sufficient to defeat the motion for summary judgment and establish a question of fact which must be resolved by trial. The trial court should not have sustained the motion for summary judgment in favor of the hospital.

The record does not contain a prima facie showing of negligence against Dr. Stryker on the issue of providing attendants. Generally, an attending staff physician is not liable for failure of a hospital to execute reasonable instructions that he has given for the treatment of his patients. See 1 D. Louisell & H. Williams, Medical Malpractice ¶ 16.07[2] (1985). There is no evidence to suggest that the physician should be liable for the hospital's alleged error under the circumstances in this case. Further, without any additional expert testimony on the duty of care owed by Dr. Stryker to the plaintiff, the doctor's affidavit that "he followed the generally accepted and recognized standard of care of skill of the community" supports the finding by the trial court. The judgment in favor of Dr. Stryker and Emergency Medical Services Group is affirmed. The judgment as to Nebraska Methodist Hospital is reversed and the cause remanded for further proceedings.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.