MELVIN R. CERNY AND LINDA CERNY, APPELLANTS AND
CROSS-APPELLEES, AND GEOTECHNICAL SERVICES, INC.,
A NEBRASKA CORPORATION, APPELLEE, V. MICHAEL LONGLEY,
M.D., ET AL., APPELLEES, AND NEBRASKA SPINE SURGEONS,
P.C., APPELLEE AND CROSS-APPELLANT.

708 N.W.2d 219

Filed December 9, 2005.    No. S-04-481.

James D. Sherrets and Theodore R. Boecker, of Sherrets &
Boecker, L.L.C., for appellants.

P. Shawn McCann, of Sodoro, Daly & Sodoro, P.C., for appellees Michael Longley, M.D., Eric Phillips, M.D., Nebraska Spine Surgeons, P.C., Nebraska Spine Center, L.L.C., and Nebraska Center, L.L.P.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Melvin R. Cerny and his wife, Linda Cerny, appeal the district court's order granting the appellees' motion for summary judgment. The Cernys alleged that the appellees, physicians Michael Longley and Eric Phillips, and their employer, Nebraska Spine Surgeons, P.C., negligently treated Melvin and failed to inform him of the risks of spinal surgery. The appellees presented deposition testimony and the affidavits of Longley and Phillips, in addition to affidavits from out-of-state experts, stating that they met the standard of care. Because the appellees' affidavits and deposition testimony provided evidence that the standard of care was met and the Cernys did not rebut with their own expert testimony, we affirm.

## BACKGROUND

Melvin suffered serious injuries in a motor vehicle collision. After experiencing continuing pain, the appellees treated him. The appellees, along with other unidentified physicians, performed surgery which rendered Melvin a paraplegic.

The Cernys sued, alleging that the appellees failed to provide the care and skill ordinarily used by other health care providers in the same circumstances and same or similar locality. They also alleged that Melvin did not give informed consent for the surgical procedure. The Cernys raised only the issue of informed consent on appeal.

According to the Cernys, the appellees failed to give Melvin the information that normally would be given under similar circumstances. The Cernys alleged that the appellees failed to inform Melvin of the risk of paralysis or alternative procedures that had less risk of paralysis.

The appellees moved for summary judgment. In support of the motion, Longley and Phillips each filed a personal affidavit

and deposition testimony asserting that he was licensed in Nebraska, that he was familiar with the standard of care, and that the standard was met by himself and the other appellees.

Longley, as the lead surgeon, testified that he had discussed the risks of surgery at length with Melvin. According to Longley, he informed Melvin of the options, including nonoperative treatment and the potential risks and benefits of surgery. Longley noted that nonoperative options were not acceptable because bed rest was difficult for Melvin because of his weight. Longley stated that the risk of paralysis from surgery varied among the medical literature. Some studies indicated no paraplegia over a large number of cases; others reported a 30-percent risk of minor neurological injury. Longley stated that he informed Melvin of the range of risk and that he believed that Melvin had a 1-percent risk of paraplegia with surgery and a much greater risk of it without surgery. Phillips testified that he had reviewed Longley's deposition and did not disagree with anything in it.

The appellees also presented the affidavits of spine surgeons located in Minnesota and New York who opined that the appellees met the standard of care. The surgeons averred that the injury Melvin suffered required surgery and that if surgery had not been performed, the condition would have likely worsened and led to paralysis. They also averred that the surgery performed was very specialized—performed by a limited number of spine surgeons throughout the United States—and that the information provided for informed consent was standard throughout the United States. They then opined that the appellees provided Melvin with adequate information to give him the opportunity to give informed consent for the surgery. The Cernys' objections to the affidavits were overruled.

Melvin submitted an affidavit stating that the appellees never informed him that he had an option not to proceed with surgery and that they did not inform him of the risk that he could become a paraplegic. In particular, Melvin averred:

> I was never informed . . . that I had the option of not proceeding with surgery. Dr. Longley always discussed risk in the context of the different surgical procedures. It was never relayed as a choice between surgery and no surgery, but

between which surgery would be performed, as Dr. Longley indicated I would become paraplegic without surgery.

. . . .

. . . Dr. Longley did not advise me that there was any significant risk of becoming paraplegic as a consequence of the surgical procedure he recommended. Had I known there was a 50-50 risk that I would be paraplegic following the surgery recommended by Dr. Longley, or that there was any substantial risk of paraplegia associated with it, I would not have elected to go forward with the surgery.

The Cernys did not present expert evidence. Because they failed to present expert evidence to rebut the appellees' evidence that they met the standard of care, the district court granted the appellees' motion for summary judgment. The Cernys appeal.

## ASSIGNMENTS OF ERROR

The Cernys assign, rephrased and consolidated, that the court erred by admitting the affidavits of surgeons from outside the locality and by granting the appellees' motion for summary judgment.

On cross-appeal, Nebraska Spine Surgeons assigns that the court erred in failing to sustain the motion for summary judgment on the ground it had been released based upon a previous satisfaction of the Cernys' claim for damages in an amount in excess of the Hospital-Medical Liability Act.

## STANDARD OF REVIEW

■ Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Eicher v. Mid America Fin. Invest. Corp., ante* p. 370, 702 N.W.2d 792 (2005).

■ In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Spear T Ranch v. Nebraska Dept. of Nat. Resources, ante* p. 130, 699 N.W.2d 379 (2005).

■ The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Wolfe v. Becton Dickinson & Co.*, 266 Neb. 53, 662 N.W.2d 599 (2003).

■ A movant for summary judgment makes a prima facie case by producing enough evidence to demonstrate that the movant is entitled to a judgment if the evidence were uncontroverted at trial. At that point, the burden of producing evidence shifts to the party opposing the motion. *Durkan v. Vaughan*, 259 Neb. 288, 609 N.W.2d 358 (2000).

## ANALYSIS

The Cernys argue that the affidavits and deposition testimony provided by the appellees were insufficient to justify summary judgment for the appellees. The Cernys contend that because the out-of-state surgeons were not from the same locality as the appellees, the affidavits should not have been admitted and could not establish the absence of a question of material fact. The Cernys, however, ignore that the appellees presented the affidavits of Longley and Phillips opining that all the appellees met the standard of care.

■ Whether a physician or surgeon failed to use a reasonable standard of care is a matter that must usually be proved by expert testimony. See *Fossett v. Board of Regents*, 258 Neb. 703, 605 N.W.2d 465 (2000). We have also specifically held that expert testimony is required to prove the standard of care in an informed consent case. See, e.g., *Eccleston v. Chait*, 241 Neb. 961, 492 N.W.2d 860 (1992).

Informed consent is defined in Nebraska by Neb. Rev. Stat. § 44-2816 (Reissue 2004), which states:

Informed consent shall mean consent to a procedure based on information which would ordinarily be provided to the patient under like circumstances by health care providers engaged in a similar practice in the locality or in similar localities. Failure to obtain informed consent shall include failure to obtain any express or implied consent for any operation, treatment, or procedure in a case in which a reasonably prudent health care provider in the community

or similar communities would have obtained an express or implied consent for such operation, treatment, or procedure under similar circumstances.

We have construed § 44-2816 as a legislative enactment of the "professional theory" of a physician's duty to disclose the risks of a treatment or procedure. *Hamilton v. Bares*, 267 Neb. 816, 678 N.W.2d 74 (2004); *Eccleston v. Chait, supra.* Under the professional theory, " ' "expert evidence is indispensable to establish what information would ordinarily be provided under the prevailing circumstances by physicians in the relevant and similar localities." ' " *Hamilton v. Bares*, 267 Neb. at 822, 678 N.W.2d at 80.

Although the Cernys focus on the affidavits of experts from out-of-state, the appellees also presented deposition testimony about the risks of the surgery, what Melvin was told, and the affidavits of Longley and Phillips stating that they met the standard of care. We have held that the affidavit of a defendant physician in a malpractice case that states that he or she met the standard of care presents a prima facie case of lack of negligence for summary judgment purposes. See, e.g., *Wagner v. Pope*, 247 Neb. 951, 531 N.W.2d 234 (1995); *Healy v. Langdon*, 245 Neb. 1, 511 N.W.2d 498 (1994). The burden then shifts to the plaintiff to present expert testimony to show that an issue of material fact exists and that it prevents summary judgment as a matter of law. See *Wagner v. Pope, supra.*

Here, the appellees presented testimony that Melvin was informed of a range of the risks of surgery, the risks of other possible procedures, the concern that nonoperative procedures were not feasible, and the belief that the risk of paraplegia from the surgery was 1 percent. They averred that they were familiar with the standard of care and that the standard of care was met. Once the appellees presented expert evidence, they established a prima facie case that if the evidence were uncontroverted at trial, they would be entitled to judgment as a matter of law. That showing shifted the burden to the Cernys to produce evidence of a factual issue. See *id.* The Cernys did not present expert evidence to contradict the appellees' expert opinions. Therefore, the Cernys failed to meet their burden of producing evidence.

The Cernys, however, contend that they did not need expert testimony to prove that the appellees failed to meet the standard. But in this case, Melvin's proffered evidence as a layperson is insufficient to prove a prima facie case of medical malpractice. Melvin's affidavit asserts that he should have been told that he had a 50-percent or "substantial" risk of paraplegia and that he was wrongly informed of the "risk in the context of the different surgical procedures." However, Melvin, as a layperson, is not qualified to testify that the standard of care requires that (1) he be informed that he had a 50-percent risk of paraplegia, (2) he be informed of the risk that is not presented in the "context of different surgical procedures," and (3) he had the option of not proceeding with surgery when he had been informed of the high risk of paraplegia if he chose to forgo surgery. Instead, the Cernys were required to present expert testimony to rebut the evidence provided by the appellees that their disclosures were sufficient. See, generally, *Wagner v. Pope, supra*. Because the Cernys failed to present expert evidence, summary judgment was properly granted.

## CONCLUSION

We determine that the appellees presented expert evidence that they met the standard of care. Because the Cernys then failed to provide expert evidence of their own, there was no genuine issue of material fact and summary judgment was proper. Accordingly, we affirm.

Given our disposition of this case, we need not address Nebraska Spine Surgeons' assignment of error on cross-appeal.

AFFIRMED.

McCORMACK, J., not participating.